No. 100,704

STATE OF KANSAS, *Appellee*, v. RICKY J. STOVALL, *Appellant*.

(312 P.3d 1271)

Opinion filed November 22, 2013.

*Gerald E. Wells*, of Lawrence, argued the cause and was on the brief for appellant.

*Jacqueline J. Spradling*, assistant district attorney, argued the cause, and *Jason E. Geier*, assistant district attorney, *Chadwick J. Taylor*, district attorney, and *Steve Six*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

JOHNSON, J.: Ricky J. Stovall seeks review of the Court of Appeals' decision affirming his rape convictions despite its finding that the district court "ignored the defendant's right to counsel" in its handling of appointed counsel's three motions to withdraw as Stovall's attorney. *State v. Stovall*, No. 100,704, 2010 WL 1379512, at *5 (Kan. App. 2010) (unpublished opinion). In the first two motions, defense counsel sought to withdraw because of conflicts of interest. After the district court forced the conflicted counsel to represent Stovall at trial, the attorney/client relationship deteriorated to the point that all communication ceased, prompting the

third motion to withdraw to be filed after the conviction but before the sentencing.

The Court of Appeals determined that Stovall had waived any challenge to the denials of defense counsel's motions to withdraw based upon conflicts of interest because he did not argue prejudice in his appellate brief. 2010 WL 1379512, at *5. With respect to the district court's denial of the third motion to withdraw, the panel found no abuse of discretion because it opined that Stovall was at fault for the total breakdown of communication between attorney and client. 2010 WL 1379512, at *6. Disagreeing with the Court of Appeals on both points, we find that the district court's complete disregard for Stovall's constitutional right to effective assistance of counsel at all critical stages of his criminal prosecution is reversible error.

## FACTUAL AND PROCEDURAL OVERVIEW

In April 2006, the State charged Stovall with rape and other crimes for sexual acts with his underage daughter, N.D.S., that had allegedly occurred several years earlier. The district court appointed an attorney from the public defender's office to represent Stovall. The district court's denials of that appointed attorney's three motions to withdraw as Stovall's counsel form the basis of this appeal.

After the appointment of counsel, motions were filed and heard, continuances were granted, and the matter was pending for over a year, with both the State and the defense contributing to the delay. Eventually, a trial date was set for September 10, 2007.

### First Motion to Withdraw

On August 28, 2007, about 2 weeks prior to the scheduled trial, Stovall's attorney moved to withdraw as defense counsel based on what the Court of Appeals called "an obvious conflict of interest." *Stovall*, 2010 WL 1379512, at *1. At the hearing on that first withdrawal motion, Stovall's attorney related that she was constrained by the attorney/client privilege from disclosing the nature of her conflict, but she had proffered hypothetical facts to the Disciplinary Administrator and elicited an opinion that she did have a con-

flict. Stovall's attorney further related that "in addition," she had also just been subpoenaed by the State to testify at a hearing in a separate case, *State v. Fulton*, in which her former client, Ian Hudson, was recanting his trial testimony that had implicated Fulton. The connection with this case was that Stovall was corroborating Hudson's recantation, so an impeachment of Hudson's testimony would likewise impugn Stovall's credibility.

The district court did not inquire further into the existence of an actual conflict of interest; rather, it simply declared that it would "assume that there is good cause" for defense counsel to ask to withdraw. The court recited the procedural history of the case in painstaking detail, apparently to make the point that the case had been pending too long, albeit the court acknowledged that the State had created some of the delay and the defendant had unconditionally waived his right to a speedy trial. The court also referred to the anticipated length of trial as creating scheduling problems. Without any mention of the defendant's right to counsel or due process rights, the district court resolved the attorney's ethical problem by ordering her to continue representing Stovall under the ostensible authority of Kansas Rule of Professional Conduct (KRPC) 1.16(c) (2012 Kan. Ct. R. Annot. 558), which provides that "[w]hen ordered to do so by a tribunal, a lawyer shall continue representation notwithstanding good cause for terminating the representation." Moreover, notwithstanding the prosecutor's argument that Stovall could waive the conflict of interest, the district court made no attempt to ascertain whether Stovall had knowingly and voluntarily waived his constitutional right to effective assistance of counsel by accepting his attorney's conflicts of interest.

### Second Motion to Withdraw

On the morning of the jury trial, prior to voir dire, defense counsel made an oral motion to withdraw as Stovall's counsel. In an in camera hearing without the prosecutor's presence, Stovall's attorney related that she believed Stovall would want to call Troy Pascha as a witness, which was a problem because the attorney had represented Pascha on child sex abuse charges within the previous 6 months. Pascha was N.D.S.'s uncle; he had babysat the child vic-

tim; and he had been convicted for sexually abusing another child. The defense would imply that it was Pascha who had abused the victim, thus causing the child to act out sexually. Stovall's attorney attempted to explain the conflict by stating, "I think any time you have to point the finger at another client saying this client didn't do it, this other client did," but the judge cut her off.

In that same hearing, Stovall's attorney endeavored to further explain part of the basis for her first motion to withdraw. Specifically, she related that Stovall had stated that he had heard Hudson admit that he made up the whole story he told at Fulton's murder trial in order to get a deal from the State on Hudson's own criminal charges. Stovall's attorney had also represented Hudson when the deal was made for Hudson to testify against Fulton. The attorney believed that she had been subpoenaed in the *Fulton* case to support the credibility of Hudson's trial testimony, which would refute or impeach Stovall's testimony about hearing Hudson recant his trial testimony. The attorney felt that she was being placed in direct conflict with her current client.

The district court denied the second motion to withdraw, questioning whether the inference to be drawn about Pascha was enough to find good cause for the attorney to withdraw under KRPC 1.16(b)(5). Specifically, the judge said:

"I can appreciate the fact that it would raise a question in counsel's mind that there is cause for withdrawal, but I'm not sure that at this date with the jury waiting in the other room and the fact that the case has gone from June . . . that it is good cause to rise to the level that the withdrawal should be granted."

Relying again on its perceived authority under KRPC 1.16(c) to force a conflicted attorney to continue to represent a criminal defendant, the district court denied the motion to withdraw. Pascha did not testify at trial. The jury convicted Stovall of all charges.

*Third Motion to Withdraw*

Stovall's attorney filed her third motion to withdraw in October 2007, about a month after trial but before sentencing. The motion related that Stovall had sent the attorney several letters demanding that she file a motion for new trial on his behalf based upon her own ineffectiveness. Stovall specifically asserted that a new trial

was warranted "on the ground of prejudice, and biasness [*sic*] which affect[ed] the performance of defense counsel." Stovall also wrote a posttrial letter to the court, in which he noted that his attorney had twice requested to be removed from the case and the court's "arrogance and unwillingness to accept defense counsel Cindy Sewell['s] request to remove herself from my case allowed said counsel to assassinat[e] and sabotage any chance of me getting a fair and unprejudicial trial." Stovall also told the court that its refusal to allow his attorney to withdraw allowed her to "reck [*sic*] her vengeance on me for testifying on another of her clients befor[e] trial" and the court should have allowed her to withdraw the first two times due to her conflict.

Stovall also listed what he perceived to be errors his attorney committed at trial, including: purposely allowing the jury to hear he had previously been in prison; purposely failing to tell a witness to not mention that Stovall had previously been in prison; and questioning him about his Islamic religion 2 days after September 11. He also enumerated actions that he believed his attorney had failed to do that could have helped the trial defense, including using the victim's preliminary hearing testimony to impeach her with the inconsistencies in her story. He also complained that his attorney had not permitted him to see the discovery items.

The district court did not hear the withdrawal motion until the sentencing hearing. Stovall's attorney told the court that her communication with Stovall had deteriorated to the point that, except for 5 minutes before the hearing, the two had not spoken since the jury's verdict 2 months prior. The attorney advised the court that Stovall had asked her to file an ineffective assistance of counsel claim on herself, which she would not do. She asked to withdraw so that the court could appoint Stovall new counsel who could effectively address his new trial and sentencing concerns, *i.e.*, who could mount a legitimate challenge to the effectiveness of trial counsel.

Despite that articulation of a patently obvious reason for the defendant to have conflict-free counsel at that stage of the proceedings, the district court voiced a query as to how trial counsel's withdrawal at such a late stage in the process would serve Stovall's

interests. Further, the court recited the non sequitur that it had denied the two prior motions to withdraw because the court did not believe the attorney had shown the conflict "arose [*sic*] to the level that was so material that it would cause a conflict." Inscrutably, the court also declared that the attorney should have known about and raised her issues much sooner, notwithstanding that the third motion, based on a total breakdown in communication, was filed within a month of the last attorney/client communication.

Stovall personally addressed the court at the sentencing hearing and stated that he had not been communicating with his attorney and that he believed that the court's refusal to grant his attorney's earlier motions to withdraw had adversely affected his trial defense. He specifically referred to his attorney's admonishment that he "should have kept [his] mouth closed" in regard to the recantation of Hudson. Stovall also related that he had conferred with his attorney about his defense, but that she had deviated from the plan at trial, effectively sabotaging his defense. As an example, he pointed out that his attorney had asked him about being a Muslim just after 9/11, which he asserted that "no competent lawyer" would have done. He further mentioned the Pascha dilemma, saying, "[T]hen we come to find out that there is another client that she had dealt with, who was the baby-sitter of the alleged victim that she again asked you to be removed, and you wouldn't let her for the same reasons." Stovall's attorney responded that her client's personal attack against her had put her in a

"position to where my position is contrary to his, so I feel like I have to cover my own, my own position rather than his, and I don't think that's fair to Ricky. Any time that I am put in a position where I have to defend myself versus defending him, I think there is a conflict."

The district court again invoked its perceived authority under KRPC 1.16(c) to order the conflicted attorney to continue representing Stovall, apparently to effect judicial economy.

*Motions for New Trial and Continuance*

The district court denied Stovall's motion for new trial based on his ineffective assistance of trial counsel claim. Stovall's attorney then asked for a continuance in order to fulfill her duty to zealously

represent her client, given that she had not spoken to Stovall about sentencing or the witnesses he would like to call at that hearing. The district court denied the continuance request, noting that it would instead permit Stovall ample time to make any statements he might have in support of a mitigation of his sentence. Accordingly, the district court permitted Stovall to make a lengthy statement during the sentencing hearing. Nevertheless, the court sentenced Stovall to consecutive prison terms of 308 months for the first rape conviction and 206 months for the second rape conviction.

*Appeal*

Stovall filed a timely notice of appeal to the Court of Appeals. In his corrected brief to the Court of Appeals, Stovall recited some of the complaints that he had voiced to the district court with respect to the adverse effect that his attorney's conflicts of interest had on the fairness of his trial. The brief specifically quotes a statement Stovall made to the trial judge at the hearing on the third motion to withdraw:

" 'So by you saying no and not allowing [trial counsel] to remove herself gave her a chance to basically sabotage my defense . . . she violated the communication rules . . . it was straight sabotage . . . with all due respect, I just feel that I didn't get a fair trial because the performance of [trial counsel] affected me getting a fair trial.' "

Stovall suggested that trial counsel's motive for sabotaging his defense was "because [Stovall] testified against a client of Trial Counsel." He also complained that his attorney undermined his credibility by causing his Muslim religion to be disclosed to the jury.

As noted, the Court of Appeals found that Stovall was procedurally barred on the conflicts of interest claim for failing to allege prejudice and was personally responsible for the cessation of communication ground for withdrawal. *Stovall*, 2010 WL 1379512, at *5-6. We granted Stovall's petition for review of that Court of Appeals decision.

DENIAL OF DEFENSE COUNSEL'S MOTIONS TO WITHDRAW

To reiterate, the district court rulings from which Stovall appealed to the Court of Appeals were the denials of defense coun-

sel's three motions to withdraw as Stovall's counsel. As the Court of Appeals aptly pointed out, "[t]he Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to effective assistance of counsel. *Wilkins v. State*, 286 Kan. 971, 981, 190 P.3d 957 (2008)." 2010 WL 1379512, at *3. The right to counsel encompasses the right to representation that is free from conflicts of interest. See *Wood v. Georgia*, 450 U.S. 261, 271, 101 S. Ct. 1097, 67 L. Ed. 2d 220 (1981). " 'It is the task of the district judge to insure that a defendant's right to counsel under the Sixth Amendment to the United States Constitution is honored. [Citations omitted.]' *State v. Carter*, 284 Kan. 312, 321, 160 P.3d 457 (2007)." *Stovall*, 2010 WL 1379512, at *3.

Stovall claims that the consequence of the denials of defense counsel's motions to withdraw was to deny him his Sixth Amendment right to the effective assistance of counsel.

*Standard of Review*

When the district court is confronted with a potential conflict of interest issue, it is required to make an appropriate inquiry into the conflict. If an appropriate inquiry is made, the district court's decision is reviewed under an abuse of discretion standard. *Carter*, 284 Kan. at 321; *State v. Vann*, 280 Kan. 782, Syl. ¶ 1, 127 P.3d 307 (2006) (same). But a district court abuses its discretion when it makes no inquiry into the nature of the conflict. 280 Kan. 782, Syl. ¶ 1.

Judicial discretion is abused if judicial action is (1) arbitrary, fanciful, or unreasonable, *i.e.*, no reasonable person would take the view adopted by the trial court; (2) based on an error of law, *i.e.*, the discretion is guided by an erroneous legal conclusion; or (3) based on an error of fact, *i.e.*, substantial competent evidence does not support a factual finding on which a prerequisite conclusion of law or the exercise of discretion is based. *State v. Ward*, 292 Kan. 541, 550, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012). The defendant bears the burden of showing the court abused its discretion. *State v. Hulett*, 293 Kan. 312, 319, 263 P.3d 153 (2011).

*Analysis*

Initially, we will concentrate on the two motions to withdraw that were founded solely on the defense attorney's conflicts of interest. In regard to the first motion, the Court of Appeals declared that "[f]orcing a lawyer to offer testimony in another proceeding that contradicts her client's testimony in that proceeding corrodes the attorney-client relationship." *Stovall*, 2010 WL 1379512, at *4. The panel looked to Comment 6 to KRPC 1.7 (2012 Kan. Ct. R. Annot. 506) for a vivid description of the damage such a conflict causes:

"[6] Loyalty to a current client prohibits undertaking representation directly adverse to that client without that client's informed consent. Thus, absent consent, a lawyer may not act as an advocate in one matter against a person the lawyer represents in some other matter, even when the matters are wholly unrelated. The client as to whom the representation is directly adverse is likely to feel betrayed, and the resulting damage to the client-lawyer relationship is likely to impair the lawyer's ability to represent the client effectively." 2012 Kan. Ct. R. Annot. 507.

The panel suggested that the fiduciary relationship between lawyer and client could not be restored after the lawyer has testified that her client is either inaccurately testifying or lying. Accordingly, the panel opined that "[i]t is for reasons such as this that our courts are asked to make an in-depth inquiry into these claims of conflict of interest." *Stovall*, 2010 WL 1379512, at *5. The panel concluded that the district court in this case had failed to conduct the requisite in-depth inquiry. Additionally, the panel noted that the district court had failed to make appropriate factual findings about the conflict in the first motion; that the "court compounded its error when considering the second conflict concerning Pascha" when, "[o]nce again, the trial judge waived his hand and absolved counsel of any professional responsibility for serving in a conflicted role without considering Stovall's right to conflict free counsel"; and that at sentencing, "[o]nce again, the court ignored the defendant's right to counsel." 2010 WL 1379512, at *5.

The Court of Appeals did not specifically label the district court's failure to adequately inquire into defense counsel's conflicts of interest as an abuse of discretion or a trial error. But the panel shifted

to a reversibility inquiry, at least intimating that error had occurred. Moreover, the panel had previously emphasized the following quoted language from *Vann*, 280 Kan. 782, Syl. ¶ 1: " 'A trial court abuses its discretion if it fails to inquire further after becoming aware of a potential conflict between an attorney and his or her client.' " *Stovall*, 2010 WL 1379512, at *3.

We have no hesitation in specifically stating that the trial court's failure to appropriately deal with defense counsel's declared conflicts of interest was an abuse of discretion. Moreover, the district court's actions in this case were an abuse of discretion for reasons other than its failure to conduct an in-depth inquiry.

As noted above, an abuse of discretion can occur when the district court is guided by an erroneous legal conclusion. The district court's reliance on KRPC 1.16(c) as a basis for denying defense counsel's motion to withdraw was legally misguided. "The Rules [of Professional Conduct] are designed to provide guidance to lawyers and to provide a structure for regulating conduct *through disciplinary agencies*." (Emphasis added.) KRPC, Scope (2012 Kan. Ct. R. Annot. 431). They are not designed or intended to provide substantive or procedural law for criminal proceedings in district court. Perhaps even more fundamentally, the district court is not a disciplinary agency responsible for determining the ethical nature of defense counsel's conduct; the Disciplinary Administrator's office is charged with that duty. Rather, the court's duty was to protect the bona fides of the criminal proceedings, including protecting the defendant's constitutional rights to due process and to effective assistance of counsel. In sum, the district court's rulings were based upon multiple errors of law.

Likewise, the court failed to make any meaningful factual findings to support its actions. For instance, on the second motion, the evidence recited by the trial judge to support his conclusion that good cause did not rise to a level such that withdrawal should be granted was that the jury was waiting in the other room and that the case had been pending a long time. Moreover, one could deem the judicial action arbitrary, fanciful, or unreasonable because no reasonable person would force a defendant to go to trial with a conflicted attorney based upon prior trial date delays that had been

partially caused by the State or based upon court scheduling problems, where the defendant had unconditionally waived speedy trial rights. In other words, the district court's actions in ruling on the first two withdrawal motions fit into all of the definitions of an abuse of discretion. In short, it was error for the trial court to deny the withdrawal motions.

Notwithstanding the Court of Appeals' assessment that a conflict of interest existed and the district court had failed to appropriately inquire about the conflict, the panel refused to decide the merits of reversibility, determining that Stovall had waived or abandoned the issue by not properly briefing it. The panel's rationale was founded upon a requirement that it gleaned from *Boldridge v. State*, 289 Kan. 618, 622, 215 P.3d 585 (2009), to-wit: "A defendant has the burden of proving that a conflict of interest affected the adequacy of the attorney's representation." *Stovall*, 2010 WL 1379512, at *5. Then, the panel declared that Stovall had failed to argue this requirement in his appellate brief. 2010 WL 1379512, at *5.

As will be discussed later, the *"Boldridge* requirement" may or may not be applicable to the circumstances of this case. Nevertheless, as we have alluded to above, Stovall's appellate brief did identify some of the adverse effects that he claimed emanated from his attorney's conflicts. The brief quoted Stovall's statement to the district court that the court's refusal to grant his attorney's withdrawal motions " 'gave her a chance to basically sabotage my defense . . . she violated the communication rules' " and her performance adversely " 'affected me getting a fair trial.' " The brief relates back the adverse effect to the conflict by quoting Stovall's statement that the trial court's denials of his attorney's withdrawal motions " 'allowed her to reck [*sic*] her vengeance on me for testifying on another of her clients befor[e] trial . . . .' " Clearly, Stovall's brief claimed that his attorney's conflicts of interest adversely affected the adequacy of his attorney's representation in this case.

Further, with respect to the second motion to withdraw, the brief recites that Stovall wanted to call Pascha as a witness to point out Pascha's contact with the victim, but Stovall's attorney had recently represented Pascha, suggesting that Stovall's counsel

would be constrained from implicating Pascha as the abuser. The elimination of a potential defense strategy can surely be characterized as adversely affecting the attorney's representation. Moreover, the perils of trying to serve two masters is literally as old as the Bible. See Matthew 6:24 ("No one can serve two masters. Either you will hate the one and love the other, or you will be devoted to the one and despise the other."). Early on, this court recited " 'No man can serve two masters' " without feeling the need to attribute that concept to any source. *Haxton v. Harris, Treasurer*, 19 Kan. 511, 512 (1878). The inability of defense counsel to serve the interests of both Stovall and Pascha necessarily affected the adequacy of her representation of Stovall.

Perhaps the panel was looking for a recitation of more specific things that counsel did or did not do during the trial that were the result of one or more of the conflicts and that had an adverse effect on the defendant. Such a requirement may be asking too much. Recently, in *State v. Galaviz*, 296 Kan. 168, 183, 291 P.3d 62 (2012), we discussed the potential difficulty one can encounter in trying to identify the precise adverse effect that has resulted from a conflict of interest:

" '[C]ounsel's conflicting obligations to multiple defendants "effectively sea[ls] his lips on crucial matters" and make[s] it difficult to measure the precise harm arising from counsel's errors.' *Mickens [v. Taylor]*, 535 U.S. [162, 168, 122 S. Ct. 1237, 152 L. Ed. 2d 291, *reh. denied* 535 U.S. 1074 (2002)] (quoting *Holloway [v. Arkansas]*, 435 U.S. [475, 489-90, 98 S. Ct. 1173, 55 L. Ed. 2d 426 (1978)]). Also, '[j]oint representation of conflicting interests is suspect because of what it tends to prevent the attorney from doing.' *Holloway*, 435 U.S. at 489-90. The record in joint representation cases will ordinarily not memorialize mistakes of omission as it does affirmative instances of trial error, so for a court to evaluate the existence and effect of such mistakes of omission would entail 'unguided speculation.' *Holloway*, 435 U.S. at 490-91."

Although the *Galaviz* discussion was in conjunction with a scenario that warrants a presumption of prejudice, the concepts are equally applicable to our scenario in which defense counsel was called upon to zealously represent Stovall while protecting the interests and the confidences of her former client, Pascha. In sum, we find that the case was adequately presented to allow the panel to proceed to consider whether the district court's abuse of discre-

tion in denying defense counsel's motions to withdraw constituted reversible error. The tougher question is what reversibility test is to be applied.

The holding in *Boldridge*, upon which the Court of Appeals relied for its prejudice requirement, actually stated:

"To demonstrate that a conflict of interest resulted in ineffective assistance of counsel, a defendant has the burden of proving a reversible conflict—that is, (1) a conflict of interest (2) that affected the adequacy of the attorney's representation. See *Mickens v. Taylor*, 535 U.S. 162, 168, 122 S. Ct. 1237, 152 L. Ed. 2d 291, *reh. denied* 535 U.S. 1074 (2002); [*State v.*] *Gleason*, 277 Kan. [624, 650, 88 P.3d 218 (2004)]. A defendant who can demonstrate that a conflict of interest affected the adequacy of his or her counsel's representation need not demonstrate prejudice in the traditional sense, which requires the defendant to prove that counsel's deficient performance affected the outcome of the trial, due to the difficulty of establishing such a claim in cases based on conflicting loyalties. See *Mickens*, 535 U.S. at 174." 289 Kan. at 622-23.

Recently, *Galaviz* endeavored to clarify *Boldridge* with an extensive explanation of *Mickens'* descriptions of the various tests for Sixth Amendment violations. First, *Mickens* divided ineffective assistance of counsel claims into three categories. The first category includes cases where the claim is that the attorney's performance was so deficient that it denied defendant a fair trial. The test for establishing a Sixth Amendment violation under this category is the two-part *Strickland* test, *i.e.*, whether the attorney's performance was deficient and, if so, was there a reasonable probability that, without counsel's unprofessional errors, the result would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). *Mickens* referred to this test as the "general rule." 535 U.S. at 166.

The second category is referred to as the *Cronic* exception and involves the complete denial of counsel or the denial of assistance of counsel at a critical stage of the proceeding. *United States v. Cronic*, 466 U.S. 648, 658-59, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984). The court can presume prejudice under this second category.

*Galaviz* described the third category as being the circumstance "where the defendant's attorney 'actively represented conflicting interests.'" 296 Kan. at 181 (quoting *Mickens*, 535 U.S. at 166).

Obviously, this category is the one that is applicable to our analysis. But that third category—conflict cases—was further separated into three subcategories, which *Galaviz* referred to as: (1) the automatic reversal exception; (2) the adverse effect exception; and (3) the *Mickens* reservation. 296 Kan. at 182. But the definitions of those subcategories create as many questions as answers in our case.

*Galaviz* explained that a mandatory characteristic of an automatic reversal exception case is "multiple concurrent representation," which means that the attorney is simultaneously representing codefendants with antagonistic interests in the same proceeding. 296 Kan. at 183. Obviously, that subcategory is not applicable here.

The second subcategory requires the defendant to demonstrate that the conflict of interest actually affected the adequacy of the attorney's representation and "applies when there is (1) an active conflict of interest because of concurrent representation of codefendants but (2) there was no objection to the conflict of interest before or during the proceeding." 296 Kan. at 183. This category does not fit our scenario because the attorney's representation of Pascha had concluded (except for her concurrent ethical duty to protect a former client) and there *were* objections to the conflicted representation made before, during, and after Stovall's trial.

The third subcategory includes situations where a conflict is " 'rooted in counsel's obligations to *former* clients.' " 296 Kan. at 184 (quoting *Mickens*, 535 U.S. at 174). That circumstance fits our facts. But, pointedly, this subcategory is referred to as the *Mickens* reservation because *Mickens* left open the test to be applied to successive representation scenarios. Granted, the opinion intimates that the choice will be between the *Cuyler v. Sullivan*, 446 U.S. 335, 348-50, 100 S. Ct. 1708, 64 L. Ed. 2d 333 (1980) adversely affected test and the *Strickland* changed outcome test. But what is the binding effect when such a holding is not made, but left open?

Perhaps more fundamentally, *Mickens* commenced by declaring that the question presented in that case was "what a defendant must show in order to demonstrate a Sixth Amendment violation where the trial court fails to inquire into a potential conflict of interest about which it knew or reasonably should have known."

535 U.S. at 164. Here, the district court did inquire into defense counsel's declared conflict of interest, albeit the trial judge did not ask the right questions or apply the correct legal standard. Indeed, the State's brief in this case argues that the district court did make a reasonable inquiry, specifically pointing out that "[a]ll in all, there are at least 24 pages of transcript showing that the first motion to withdraw was argued and discussed amongst counsel and the district court." Did *Mickens* intend to include within the meaning of "fails to inquire" the circumstance where the trial court conducts a contested hearing on the claimed conflict of interest but abuses its discretion in ruling on the issue?

From a commonsense perspective, this circumstance more closely fits the mold of a trial error that should be analyzed for harmlessness. Indeed, at least one commentator has suggested that common sense should lead one to recognize that *Strickland's* second prong "is in effect a harmless error inquiry." Geimer, *A Decade of Strickland's Tin Horn: Doctrinal and Practical Undermining of the Right to Counsel*, 4 Wm. & Mary Bill Rts. J. 91, 132 (1995). If that is the case, the second prong of the *Sullivan* test, *i.e.*, adversely affected representation, is likewise a poorly disguised harmless error inquiry. In that event, our recent decisions in *Ward*, 292 Kan. at 568-69, and its progeny counsel that the State, as the party benefited by the error, should carry the burden of proving beyond a reasonable doubt that the error did not affect substantial rights, rather than saddling the defendant with the additional burden of proving adverse effect after having proved an abuse of discretion.

Nevertheless, if we adhere to the tack we took in *Galaviz*, we would apply the adverse effect test, notwithstanding that this case involves successive representation, because "the State does not argue any other test should be applied." 296 Kan. at 192. To clarify again, that test is less stringent than the *Strickland* test, and as we said in *Boldridge*, a defendant claiming that his or her attorney had a conflict of interest that affected the adequacy of counsel's representation need not demonstrate *prejudice* in the traditional sense, *i.e.*, need not establish that the error affected the outcome of the proceeding. 289 Kan. at 622-23.

Perhaps the person with the keenest insight into the effect the conflict of interest will have on the defense attorney's ability or capability to zealously represent the defendant is the conflicted attorney. Here, the attorney sought confirmation about the conflicts from the office of the Disciplinary Administrator and then advised the court on at least three separate occasions that she had conflicts of interest that required her withdrawal. The trial court did not challenge the veracity of counsel's statements; rather, it accepted that she had good cause for her withdrawal motions. How then could the trial judge know what questions were not asked or arguments not made because of defense counsel's conflict? It should be enough that the conflict created an actual constraint on the attorney's ability to adequately represent her client.

Here, defense counsel tried to explain the constraints imposed upon her by the conflicts, such as when she told the district court: "I think any time you have to point the finger at another client saying this client didn't do it, this other client did[, there is a conflict]." That dilemma is not difficult to grasp and one has to wonder whether another attorney, who owed no attorney-client duty to Pascha, would have developed a trial defense strategy implicating Pascha. Pointedly, the conflicted attorney did not do so after being forced to try the case.

Defense counsel also advised the court about the problem that was actually *caused by the State* when it subpoenaed her to essentially testify against Stovall in the *Fulton* case. As related above, the Court of Appeals described the corrosive effect that circumstance had on the attorney-client relationship. At the hearing on the third motion to withdraw, the district court opined that the subpoena conflict had not materialized, because the defense attorney had not actually testified in the *Fulton* case. But that observation misses the point. The attorney-client privilege is designed to secure a client's confidence in the secrecy of the communications with his or her attorney during the representation. If a client believes that the State can force his or her attorney to testify against the client, the damage to the free exchange of information between attorney and client has already been done. Moreover, it is no wonder that Stovall suspended all communication with his attorney after the trial, given

that his attorney repeatedly stated in open court that she could not advocate solely for him because of duties she owed to others.

As a consequence of the adverse effect on representation created by defense counsel's conflicts of interest, Stovall was effectively denied his Sixth Amendment right to effective assistance of counsel at trial. Accordingly, his convictions are reversed, and the matter is remanded for a new trial with directions to appoint conflict-free counsel.

Although our ruling on the first two withdrawal motions drives the disposition on appeal, we pause briefly to comment on the third motion to withdraw. Apparently, the district court believed that giving Stovall the opportunity to make a pro se statement at sentencing and in support of his new trial motion was an adequate substitute for affording him adequate representation from an informed, prepared, and effective counsel. We disagree. To the contrary, that circumstance fits more closely into *Mickens'* second category of ineffective assistance of counsel claims—the *Cronic* exception—where a defendant is denied the assistance of counsel at a critical stage of the proceedings and prejudice is presumed. Therefore, the sentencing judge's actions would provide an independent basis to provide relief to Stovall.

The judgments of the Court of Appeals and the district court are reversed, and this case is remanded with directions to the district court.

❋ ❋ ❋

LUCKERT, J., concurring: I agree with the majority's decision to reverse the Court of Appeals' decision in *State v. Stovall*, No. 100,704, 2010 WL 1379512 (Kan. App. 2010) (unpublished opinion). My rationale for doing so varies from the majority, however.

## Court of Appeals Erred in Finding Waiver of Argument

As the majority has explained, the Court of Appeals determined that Stovall had waived any challenge to the erroneous denial of his attorney's motions to withdraw based upon defense counsel's conflicts of interest because he did not argue either prejudice or adverse effect in his appellate brief. *Stovall*, No. 100,704, 2010 WL

1379512, at *5. Although I agree with the Court of Appeals that Stovall failed to argue prejudice, I disagree with the Court of Appeals' hard-line conclusion that this failure constituted a waiver of the argument, because Stovall presented a different theory—one that was reasonable and supported by authority—and, in my view, this theory did not foreclose our consideration of the alternative test used by the Court of Appeals in its analysis.

To explain my rationale, I begin with Stovall's short and to the point argument in his brief to the Court of Appeals. He declared that "[a] showing that Trial Counsel had an actual conflict would mean an automatic reversal. *State v. Ryan*, 29 Kan. App. 2d 297, 26 P.3d 707, *rev. denied* 272 Kan. 1422 (2001)." Stovall's citation to *Ryan* was appropriate because *Ryan* contains language supporting Stovall's request for automatic reversal upon a showing that defense counsel had a conflict of interest.

In *Ryan*, the defendant and a codefendant were represented by the same attorney. Donna Marie Ryan attempted to withdraw her plea, arguing her attorney had a conflict of interest. The trial court denied the motion, concluding Ryan suffered no prejudice because of the conflict. The Court of Appeals reversed, stating: "We find that a showing defendant's attorney had an actual conflict of interest when negotiating a plea agreement requires the district court to grant defendant leave to withdraw the guilty plea prior to sentencing." *Ryan*, 29 Kan. App. 2d at 300. In reaching this conclusion, the Court of Appeals relied on and quoted from this court's decision in *State v. Jenkins*, 257 Kan. 1074, 1083-84, 898 P.2d 1121 (1995).

In *Jenkins*, the defendant was charged with one count of sale of cocaine as a result of a sale to a confidential informant. Jenkins' attorney had represented the confidential informant on unrelated charges that took place while the informant was supplying information to law enforcement officers, including information that led to the charges against Jenkins. After Jenkins was convicted by a jury, he appealed to the Court of Appeals, arguing his counsel had a conflict of interest and was ineffective. The Court of Appeals determined a conflict did exist, but it affirmed the conviction because Jenkins failed to show that the conflict of interest adversely

affected his attorney's performance. *State v. Jenkins*, No. 70,958, unpublished opinion filed October 28, 1994, *rev'd* 257 Kan. 1074, 898 P.2d 1121 (1995).

On review of the Court of Appeals' decision, this court agreed with the Court of Appeals that defense counsel had an "actual conflict." *Jenkins*, 257 Kan. at 1087. But this court disagreed with the Court of Appeals' requirement that the defendant must show the conflict adversely affected his attorney's performance in order to receive a reversal of the conviction. Instead, the court concluded Jenkins was entitled to an automatic reversal. This court broadly held:

"[W]here the trial court is advised of the possibility of a conflict by either the defendant or the State, the court is required to initiate an inquiry to insure that the defendant's Sixth Amendment right to counsel is not violated. In this instance, a showing that there is an actual conflict of interest will result in automatic reversal. See *Holloway* [*v. Arkansas*, 435 U.S. 475, 489, 98 S. Ct. 1173, 55 L. Ed. 2d 426 (1978)]. Prejudice to the defendant is presumed, and reversal of the defendant's conviction is automatic." *Jenkins*, 257 Kan. at 1084.

The *Jenkins* court also expansively stated that the holding applied to "any situation where there is a possibility defense counsel suffers from any sort of conflict of interest." *Jenkins*, 257 Kan. at 1084.

The broad holding in *Jenkins* would apply in this case, which like *Jenkins* presents a successive representation case where the potential conflict of interest was made known to the trial court but where, as determined by the Court of Appeals, "the trial court made no real inquiry." *Stovall*, 2010 WL 1379512, at *6. Further, despite defense counsel's repeated pretrial requests to withdraw because of her conflict of interest and her posttrial protest that she could not advocate for Stovall's posttrial motions without attacking her own performance, the trial court failed to insure that Stovall's Sixth Amendment right to counsel was not violated. Clearly, defense counsel operated under a conflict of interest because of duties owed to different clients when a possible defense strategy was to point the finger of guilt at a third party who happened to be a former client of Stovall's defense counsel. Yet another conflict arose when Stovall asked defense counsel to file a motion for new trial based on ineffective assistance of counsel; at that point, coun-

sel's self-interest was directly in conflict with Stovall's interests. Under those circumstances, *Ryan* and *Jenkins* indicate that Stovall was entitled to automatic reversal.

Hence, Stovall presented the Court of Appeals with precedent for his position, and according to that precedent, he did not need to present an argument regarding the adverse effect any conflict of interest had on his counsel's performance. In addressing Stovall's argument, the Court of Appeals did not cite to either *Ryan* or *Jenkins* or explain why the rule in those cases did not apply. Instead, in stating that reversal was not automatic, the Court of Appeals cited to *Boldridge v. State*, 289 Kan. 618, 622, 215 P.3d 585 (2009) (conflict of interest arising because defense counsel had authorized the issuance of subpoenas for telephone records in the investigation of that same case when acting as pro tempore judge), and *State v. Carter*, 284 Kan. 312, 321, 160 P.3d 457 (2007) (conflict arising from irreconcilable differences between defendant and his attorney). But neither *Boldridge* nor *Carter* is a successive representation conflict-of-interest case.

Thus, the Court of Appeals continued a pattern rampant in decisions of this court and the Court of Appeals of failing to recognize the distinctions made by the United States Supreme Court in *Mickens v. Taylor*, 535 U.S. 162, 122 S. Ct. 1237, 152 L. Ed. 2d 291, *reh. denied* 535 U.S. 1074 (2002). The *Mickens* distinctions categorized claims brought under the right to counsel provisions of the Sixth Amendment to the United States Constitution. Those categories and the test to be applied in each category were discussed at length in the majority opinion and in *State v. Galaviz*, 296 Kan. 168, 180-87, 291 P.2d 62 (2012), and need not be repeated here.

One of the critical points from *Galaviz* relating to Stovall's argument is that the holding in *Jenkins* was overly broad. Under *Mickens*, Stovall is not entitled to automatic reversal of his convictions and sentences. See *Galaviz*, 296 Kan. at 183. The additional essential point relating to this case is that, to date, the United States Supreme Court has not announced the test that applies in a case such as the one presented here—a successive representation case where defense counsel's conflict of interest was made known to the trial judge, who then failed to adequately inquire about the

conflict. *Galaviz*, 296 Kan. at 184. For this reason alone, I would not take the hard-line approach of the Court of Appeals.

In addition, in light of the conflict that has existed in our caselaw and the confusing nature of the cases applying the adverse effects test in cases where it may not apply, Stovall should not be faulted for arguing for automatic reversal. His reliance on the pre-*Mickens* cases of *Jenkins* and *Ryan* is made even more reasonable in light of the fact that various panels of the Court of Appeals continued to quote the *Jenkins* holding in post-*Mickens* decisions. See, *e.g.*, *Mitchner v. State*, No. 97,729, 2008 WL 2369813 (Kan. App.) (unpublished opinion), *rev. denied* 287 Kan. 766 (2008).

Further, because Stovall cited authority for his request for automatic reversal, I believe he complied with Supreme Court Rule 6.02(a)(5) (2012 Kan. Ct. R. Annot. 38) (appellant's brief must include "[t]he arguments and authorities relied on"). While one might argue it is a better practice for a party to present arguments relating to each of two conflicting strands of cases, we have not been this stringent in ineffective assistance of counsel cases. In fact, we have on occasion criticized the Court of Appeals for not *sua sponte* remanding a case for a hearing under the authority of *State v. Van Cleave*, 239 Kan. 117, Syl. ¶ 2, 716 P.2d 580 (1986) (ineffective assistance of counsel claims will ordinarily not be heard for first time on appeal, but defendant may request remand to district court for hearing to develop claim). See, *e.g.*, *Rowland v. State*, 289 Kan. 1076, 1085, 219 P.3d 1212 (2009). Furthermore, in *Galaviz*, under circumstances similar to those in this case, we concluded it was appropriate to remand the case for a *Van Cleave* hearing even though such a hearing had not been requested by the defendant who, like Stovall, had argued an entitlement to automatic reversal under the holding in *Jenkins*. *Galaviz*, 296 Kan. at 194. At a minimum, Stovall is entitled to this same relief.

## *Consideration of Remedy in Light of the Record*

We have on occasion recognized that a record is sufficient to make an ineffective assistance of counsel determination for the first time on appeal. See, *e.g.*, *State v. Gleason*, 277 Kan. 624, 650-52, 88 P.3d 218 (2004). The United States Supreme Court recognized

this possibility in *Mickens*, 535 U.S. at 173-74. The majority followed this lead in this case, concluding (1) the adverse effects test would be applied because it was the test argued for by the State and (2) the record was sufficient to establish adverse effects. I agree in part, but disagree in other respects. I agree that the State should be held to the test it argued and that the record is sufficient in this case to determine Stovall was denied his right to effective assistance of counsel.

But I am not yet ready to acknowledge one test as more logical than another when faced with a successive representation case. Ultimately, it is possible I would be willing to adopt the majority's suggested approach of shifting the burden of persuasion to the State. But I note that this option has critics. See Shiner, *Conflicts of Interest Challenges Post Mickens v. Taylor: Redefining the Defendant's Burden in Concurrent, Successive, and Personal Interest Conflicts*, 60 Wash. & Lee L. Rev. 965, 1001 (2003). Consequently, I will wait to express an opinion regarding which of the various tests I think should be applied in this situation until the question has been briefed and argued.

ROSEN, J., joins in the foregoing concurrence.

\* \* \*

BILES, J., dissenting in part and concurring in part: I must dissent in part from the majority's outcome and the analysis of my colleagues in arriving at that outcome. The practical effect requires automatic reversal of a conviction based on a presumption of prejudice whenever a district court is deemed to have inadequately inquired into a defense counsel's motion to withdraw based on a claimed conflict of interest. The majority's decision cannot be read any other way, and that is not my reading of the applicable caselaw under the Sixth Amendment to the United States Constitution.

In my view, in order to have his convictions reversed Stovall was required to demonstrate the alleged conflict was an active conflict of interest and adversely affected trial counsel's performance. This defendant made no attempt in his briefing to argue this. More pointedly, it is clear from his briefing that defendant did not un-

derstand what was necessary to demonstrate a violation of his right to conflict-free counsel under the Sixth Amendment. I would affirm the convictions.

The obvious factual inquiry presented by this case is a narrow one: Did the Court of Appeals err when it held Stovall failed to brief whether the claimed conflicts of interest adversely affected his counsel's performance and instead focused *"only* on the district court's failure to make an adequate inquiry upon notice of a potential conflict?" (Emphasis added.) *State v. Stovall*, No. 100,704, 2010 WL 1379512, at *5 (Kan. App. 2010) (unpublished opinion). No reasonable reading of Stovall's brief to the Court of Appeals can dispute the factual accuracy of the panel's holding concerning the written document before it.

And from this unavoidable factual observation, we necessarily arrive at the legal question: Was it *necessary* for Stovall to argue in his appellate brief that the claimed conflicts of interest adversely affected his counsel's performance? If so, then the Court of Appeals was correct because Stovall did not mention this requirement—not even in passing. See *State v. Longstaff*, 296 Kan. 884, 891, 299 P.3d 268 (2013) ("A claim raised in passing without argument or citation to authority is deemed waived."); see also Supreme Court Rule 6.02(a)(5) (2012 Kan. Ct. R. Annot. 38) (appellant's brief must include "the arguments and authorities relied on").

The Sixth Amendment guarantees in "all criminal prosecutions" that "the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." And this right to counsel is the right to the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674, *reh. denied* 467 U.S. 1267 (1984); *Chamberlain v. State*, 236 Kan. 650, 656-57, 694 P.2d 468 (1985) (adopting *Strickland*). In other words, to be meaningful the right to counsel necessitates more than a lawyer's mere presence at a proceeding. See *State v. Galaviz*, 296 Kan. 168, 174, 291 P.3d 62 (2012). This constitutional right extends a duty of loyalty to the client, which dictates that a defendant in a criminal trial must have representation that is free from conflicts. *State v. Cheatham*, 296 Kan. 417, 430, 292 P.3d 318 (2013).

"The purpose of the effective assistance guarantee 'is simply to ensure that criminal defendants receive a fair trial.' " *Galaviz*, 296 Kan. at 174 (quoting *Strickland*, 466 U.S. at 689). The Sixth Amendment right to counsel is made applicable to state proceedings by the Fourteenth Amendment to the United States Constitution. 296 Kan. at 174. Ineffective assistance of counsel claims may be based on deficient performance or conflict of interest. But claims based on conflict of interest may be analyzed differently than those based on deficient performance. *Cheatham*, 296 Kan. at 430.

This court recently reviewed the required inquiries attendant to conflict-of-interest-based ineffective assistance of counsel claims in *Galaviz*. In that case, the court declined to automatically reverse a defendant's probation revocation solely because the district court failed to *sua sponte* inquire into a potential conflict after defense counsel disclosed that he previously represented the victim whose allegations led to the conviction underlying the defendant's probation. *Galaviz*, 296 Kan. at 171. We held the defendant's probation revocation could not be reversed unless defendant demonstrated counsel's active conflict of interest *"had an adverse effect on his representation."* (Emphasis added.) 296 Kan. at 193. In so deciding, we revisited caselaw from our court and the United States Supreme Court regarding ineffective assistance of counsel claims and claims of conflict between defendants' and their counsels' interests. 296 Kan. at 180-82.

*Galaviz* adopted a two-step analytical process. The first step is determining whether there was "an active conflict of interest[.]" The second step is deciding whether "the conflict require[s] reversal[.]" 296 Kan. at 178-180. We described three subclasses of "active conflict of interest" arising from the United States Supreme Court case of *Mickens v. Taylor*, 535 U.S. 162, 122 S. Ct. 1237, 152 L. Ed. 2d 291, *reh. denied* 535 U.S. 1074 (2002). 296 Kan. at 181-85. The test for whether reversal is required depends on the conflict subclass at issue. But only one subclass qualifies for automatic reversal based upon the district court's failure to inquire: when a defendant or his attorney timely objects to the lawyer's multiple concurrent representations of clients with antagonistic in-

terests. *Galaviz*, 296 Kan. at 183. The majority concedes Stovall's case does not fall within this subclass because there were no multiple concurrent representations.

*Galaviz* noted that cases falling within the other two subclasses warrant reversal *only* if the defendant can demonstrate both the existence of an active conflict and an adverse effect arising from the conflict. But, we noted, there remains some uncertainty in the caselaw as to what level of "adverse effect" must be shown in a case falling within the third subclass—conflicts " 'rooted in counsel's obligations to former clients' or 'counsel's personal or financial interests.' " 296 Kan. at 184 (quoting *Mickens*, 535 U.S. at 174). As we noted in both *Galaviz* and *Cheatham* as to the third subclass of cases, it was undecided at the time of those decisions whether courts should use the adverse effect test or the more stringent *Strickland* test requiring a defendant to show a reasonable probability that, but for counsel's conflict of interest, the result of the proceeding would have been different.

The majority concedes Stovall's case falls within the third *Galaviz* subclass. We referred to this subclass in *Galaviz* as "the *Mickens* reservation." 296 Kan. at 182. And in *Galaviz*, we applied the adverse effect test because both the defendant and the State advocated for its use. *Galaviz*, 296 Kan. at 192. In *Cheatham*, we also applied the adverse effect test because the parties advocated for it and applied it in their respective arguments. *Cheatham*, 296 Kan. at 449. In Stovall's case, in a dedicated section of its Court of Appeals brief on that topic, the State expressly argued application of the adverse effect test was required.

But the point to all of this is, regardless of whether the adverse effect or *Strickland* test applies to third-subclass cases like the one here, Stovall failed to make any argument under either. As the State points out, Stovall did not argue in his brief "in the slightest that the alleged conflict [of interest] between himself and his trial counsel had any legitimate and tangible effect on his trial."

And this brings me to my most serious disappointment with the majority's opinion: it invents for the defendant an argument that was never made. The majority states:

"Nevertheless, as we have alluded to above, Stovall's appellate brief did identify some of the adverse effects that he claimed emanated from his attorney's conflicts. The brief quoted Stovall's statement to the district court that the court's refusal to grant his attorney's withdrawal motions ' "gave her a chance to basically sabotage my defense . . . she violated the communications rules" ' and her performance adversely ' "affected me getting a fair trial." ' The brief relates back the adverse effect to the conflict by quoting Stovall's statement that the trial court's denial of his attorney's withdrawal motions ' "allowed her to reck [*sic*] her vengeance on me for testifying on another of her clients before trial." ' *Clearly, Stovall's brief claimed that his attorney's conflicts of interest adversely affected the adequacy of his attorney's representation in this case.*" (Emphasis added.) 298 Kan. at 373.

To put it bluntly, this statement deceives its readers. The quoted phrases are snipped from Stovall's appellate brief in a recitation of facts regarding the third motion to withdraw from the sentencing hearing—not argument about adverse effect at trial—and in their actual context are used by Stovall only to show why he believed the district court was required to make a more adequate inquiry into the alleged conflicts of interest and abused its discretion in denying the third motion to withdraw at the sentencing hearing without an adequate inquiry. These factual scraps are in no way used to advance an appellate-level argument that counsel's performance was adversely affected at trial. See Supreme Court Rule 6.02(a)(5).

Also baffling is the effort to speculate whether denial of the second motion to withdraw involving the potential conflict with possible witness Pascha adversely affected counsel's later representation at trial. The majority asserts that the purpose of calling Pascha would have been to implicate him as "the abuser." It then quotes the Bible about the impossibility of serving two masters and concludes: "The inability of defense counsel to serve the interests of both Stovall and Pascha *necessarily affected* the adequacy of her representation of Stovall." (Emphasis added.)

Curiously, this determination is asserted even though Stovall's counsel expressly agreed during oral argument that he had made *no* argument that this potential conflict adversely affected trial counsel's performance. And the majority engages in its "analysis" without even considering there might just be alternative explanations why Pascha was not called other than the only one considered.

For example, it might be that Pascha was not called because the evidence that Stovall was the abuser included that the DNA of a child born to the underage victim matched Stovall's DNA. And it does not seem too far of a reach that the jury might view accusing Pascha as "the abuser" as less than credible under these circumstances, and that abandoning the accusation altogether would be an appropriate trial strategy. It also just might be that Pascha was unavailable.

The point of having an adequate record on appeal and actual appellate arguments on these points is to avoid the temptation to speculate. Regardless, Stovall conceded no adverse effect argument was advanced on appeal concerning Pascha, so why does the majority conjure one up for him?

It is also stunning to suggest that a harmless error standard might be a more appropriate "common sense perspective" for the ineffective assistance of counsel legal analysis—with the burden being on the State to demonstrate harmlessness beyond a reasonable doubt, citing a 1995 law review article regarding *Strickland*. It is asserted such an approach is preferable to "saddling the defendant with the additional burden of proving adverse effect after having proved an abuse of discretion."

But this suggestion is oblivious to Sixth Amendment caselaw arising since 1995, most notably the 2002 *Mickens* decision that went to some lengths to develop and recast this jurisprudence. *Mickens* controls because we are addressing Stovall's right to conflict-free counsel under the Sixth Amendment and *Mickens* makes clear that reversal of a conviction under the circumstances applicable in Stovall's case is not automatic and requires him to show prejudice, although admittedly it is still undecided whether the test for prejudice is adverse effect on counsel's performance or the stricter *Strickland* requirement that the error affected the outcome of the proceeding.

This is exactly the approach we recently took in *Cheatham* in which the claim was a conflict of interest based on counsel's personal or financial interests, a conflict akin to one " 'rooted in counsel's obligations to *former* clients[,]' " and in the same *Galaviz* subclass. *Galaviz*, 296 Kan. at 184 (quoting *Mickens*, 535 U.S. at 174).

In *Cheatham*, we held: "Two questions must be answered to resolve this claim: (1) Did this fee agreement create a conflict of interest? and (2) If so, did that conflict of interest adversely affect the adequacy of Cheatham's representation?" 296 Kan. at 452.

In Stovall's appeal, he argued to the panel that the district court abused its discretion in denying the motions to withdraw by *inadequately* inquiring into the potential conflicts, and the panel agreed to that much. *Stovall*, 2010 WL 1379512, at *4-5. But is the test any different when an appellate court holds that the district court erred by failing to *sua sponte* inquire at all into a conflict that is made known to it? The answer is "no." See *Mickens*, 535 U.S. at 170-73; *Galaviz*, 296 Kan. at 187; *State v. Vann*, 280 Kan. 782, 792, 127 P.3d 307 (2006) (noting appropriate remedy could be remand for determination whether defendant can demonstrate conflict adversely affected counsel's performance). In either instance (failure to inquire or inadequate inquiry), the test moves under the circumstances here to whether the conflict existed and, if so, whether it adversely affected counsel's performance, after a determination that the trial court abused its discretion regarding the inquiry.

Accordingly, after Stovall established that the trial court made an inadequate inquiry, he had to choose between two courses: First, he could have asserted the record on appeal was sufficient to demonstrate counsel was conflicted and then go on to show that the conflicts adversely affected counsel's performance. See *Cheatham*, 296 Kan. at 450; *State v. Gleason*, 277 Kan. 624, 650-52, 88 P.3d 218 (2004). Or, in the alternative, he could have requested remand to the district court for an evidentiary hearing under *State v. Van Cleave*, 239 Kan. 117, 119-21, 716 P.2d 580 (1986) (appellate court discretion to remand ineffective assistance of counsel allegations in a direct appeal); see *State v. Jenkins*, 257 Kan. 1074, 1079-80, 898 P.2d 1121 (1995); see also *Galaviz*, 296 Kan. at 194 ("Galaviz has not requested a *Van Cleave* hearing. Normally, this would mean we would not consider his [conflict-based ineffective assistance] claim and he would have to bring his claims in a proceeding under K.S.A. 60-1507.").

But Stovall stopped his argument short of the goal line, as the Court of Appeals correctly determined, with the abuse of discretion issue. And it is difficult to understand why Stovall's argument would be so incomplete. To begin with, in the Court of Appeals his failure to brief the adverse effect test was pointed out specifically and prominently by the State in its responsive brief. There, the State highlighted this shortcoming in a section of its brief entitled "Stovall has not shown the alleged conflict adversely affected counsel's performance." In that section, the State argued, for example, that "[i]n order to prevail, therefore, Stovall is required 'to establish that the conflict of interest adversely affected . . . [his public defender's] performance,' " citing *Mickens*. Yet Stovall did not reply to this obvious prompting, even though he would have been permitted to do so under our rules. See Kansas Supreme Court Rule 6.05 (2012 Kan. Ct. R. Annot. 45).

What seems most likely is that Stovall did not understand his obligations under the caselaw that follows *Mickens*. This possibility appears from a review of Stovall's petition for review to our court in which Stovall asserted the Court of Appeals erred in holding that he had failed to argue adverse effect because "[i]n its analysis of this case, the Court of Appeals did not differentiate between prejudice and presumption of prejudice as it applies to the facts of the case. *The United States Supreme Court makes clear in those cases where actual conflicts are present there is a presumption of prejudice.*" (Emphasis added.)

This statement in Stovall's petition follows a lengthy block quote from *Strickland*. And by making repeated references in his petition for review to "actual conflicts of interest," Stovall appears not to appreciate that this phrase carries a particular meaning under Sixth Amendment caselaw. As we noted in *Galaviz*, the *Mickens* Court explained the phrase "actual conflict of interest" "means more than a mere division of loyalties; *it requires a conflict that affected counsel's performance.*" (Emphasis added.) *Galaviz,* 296 Kan. at 186 (citing *Mickens*, 535 U.S. at 172 n.5). Clearly, Stovall did not understand this, or had no argument to advance toward it, and believed that showing the factual existence of a conflict was all that was required of him.

For these reasons, I would affirm the Court of Appeals as to Stovall's convictions. The panel accurately determined that Stovall did not argue that the claimed conflicts of interest adversely affected his counsel's performance, but instead focused *"only* on the district court's failure to make an adequate inquiry upon notice of a potential conflict." (Emphasis added.) *Stovall*, 2010 WL 1379512, at *5. In addition, I would hold Stovall was not entitled to reversal upon simply demonstrating the district court abused its discretion in denying his counsel's motions to withdraw after an inadequate inquiry. Rather, Stovall was required to further demonstrate that an active conflict existed and that the conflict adversely affected his attorney's performance. See *Cheatham*, 296 Kan. at 452; *Galaviz*, 296 Kan. at 178-180. His brief is devoid of the necessary arguments to obtain relief.

I concur in the court's holding regarding Stovall's sentencing.

NUSS, C.J., and MORITZ, J., join the foregoing dissenting and concurring opinion.