NOT DESIGNATED FOR PUBLICATION

No. 120,109

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JAMES R. JONES,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; BRUCE C. BROWN, judge. Opinion filed September 27, 2019. Affirmed.

*James M. Latta*, of Kansas Appellate Defender Office, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before POWELL, P.J., HILL and WARNER, JJ.

PER CURIAM: James R. Jones appeals the revocation of his probation and the imposition of his underlying prison sentence. He argues the district court erred in two ways: (1) by denying Jones' motion to replace counsel and (2) by imposing his underlying prison sentence instead of sending Jones to a drug treatment facility. Finding no error by the district court, we affirm.

1

Jones was originally charged with committing 12 crimes, which included multiple forgery, identity theft, and possession of methamphetamine counts. In September 2017, as part of his plea agreement with the State, Jones pled guilty to two counts of identity theft, one count of possession of methamphetamine, and four counts of forgery. In exchange for his plea, among other things, the State agreed to dismiss the remaining counts, recommend the low number in the appropriate sentencing guidelines grid box, and jointly request that Jones be granted a dispositional departure to probation. Per his plea agreement, Jones filed a motion for a durational or dispositional departure, and the district court subsequently sentenced Jones to 44 months in prison but granted the downward dispositional departure and placed him on 18 months' probation.

In July 2018, a warrant was issued alleging Jones had violated his probation by failing to report to work release or to his intensive supervision officer (ISO). Two weeks later, an additional warrant was issued alleging Jones had possessed methamphetamine.

At the probation revocation hearing, Joshua Mirel represented Jones. Mirel announced to the district court that the State and Jones had reached a resolution. In exchange for Jones admitting to violating his probation, which included the commission of a new crime, and accepting imposition of his underlying prison sentence of 44 months, the State would not file a new felony charge for Jones' possession of methamphetamine. Jones told the district court he understood the agreement but was "kinda confused" as to why he could not argue for drug treatment instead of the underlying prison sentence. The district court took a recess for Jones to discuss his question with Mirel.

Following the recess, the State asked the district court to inquire if Jones wanted to discharge Mirel. The district court asked Jones if he had any concerns with Mirel's representation. Jones said that Mirel lied to him by saying he could not argue for drug

treatment instead of imprisonment. The district court told Jones that it could not discuss the particulars of the deal with him, but it would interpret Jones' comments as a request for replacement of counsel. The district court asked Jones to explain his problems with Mirel, and Jones stated that Mirel lied to him. Jones said Mirel told him that he could not argue for drug treatment but had to go to prison. Additionally, Jones claimed the prosecution "just stood up and said yeah, he can argue, we're not gonna take the deal off the table if he wants to argue for something else." Jones did not believe Mirel had his best interests in mind because Mirel was not going to argue for drug treatment.

The district court asked if Mirel had any comments. Mirel responded:

"Your Honor, the deal that was originally discussed, that my client actually was on board with, this was maybe about a week ago, a week and a half ago, was my client would . . . come in, admit, agree to do the underlying sentence, in exchange the State would not file a new charge. And that was the agreement up to about 10 minutes ago, when the district attorney, I think for the sake of efficiency, moving this proceeding along, amended their position and now opened the door for us to be free to argue. So there was no material misrepresentation made at any time to my client, Judge."

After Mirel's comments, the district court found there was "robust communication" between Jones and Mirel and no irreconcilable conflict existed, just disagreement. The district court denied Jones' request for replacement counsel.

Following the denial, Jones waived his right to an evidentiary hearing. Jones admitted to the probation violations and to committing a new crime, and Mirel argued the district court should not follow the plea agreement's recommendation for imposition of sentence but should instead adopt a substance abuse center's recommendation for drug treatment. The district court revoked Jones' probation and imposed his original underlying prison sentence, noting the fact that Jones' case had been a presumptive prison one and that Jones had a committed a new crime.

Jones timely appeals.

I.      DID THE DISTRICT COURT ABUSE ITS DISCRETION BY DENYING JONES' MOTION TO REPLACE HIS COUNSEL?

Jones' first argument on appeal is that the district court erred when it found that his counsel's statement did not create a conflict of interest. Jones argues that Mirel created a conflict of interest by arguing against his position because it constituted a legal opinion rather than a factual statement. The State responds that Mirel's statement was "confined to the facts" and no conflict existed.

Appellate courts review a possible conflict of interest for abuse of discretion. *State v. Stovall*, 298 Kan. 362, 370, 312 P.3d 1271 (2013). Judicial action is abused if the action is (1) one where no reasonable person would take the view adopted by the district court; (2) based on an error of law; or (3) based on an error of fact. 298 Kan. at 370. A district court abuses its discretion when it fails to conduct any inquiry after becoming aware of a potential conflict of interest between a defendant and his or her attorney, conducts an inquiry but fails to conduct an "'appropriate inquiry,'" or conducts an "'appropriate inquiry'" but fails to appoint replacement counsel. *State v. Pfannenstiel*, 302 Kan. 747, 761-62, 357 P.3d 877 (2015). The defendant bears the burden of establishing an abuse of discretion. See *State v. Anderson*, 291 Kan. 849, 855, 249 P.3d 425 (2011).

"'The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to effective assistance of counsel' [including] the right to representation that is free from conflicts of interest." *Stovall*, 298 Kan. at 370. It is the district court's duty to ensure the defendant's Sixth Amendment right is respected. See 298 Kan. at 370.

The right to conflict-free counsel does not give the defendant

"the right to choose which attorney will be appointed to represent the defendant. If a defendant seeks substitute counsel, the defendant 'must show "justifiable dissatisfaction" with his or her appointed counsel,' which can be 'demonstrated by showing a conflict of interest, an irreconcilable disagreement, or a complete breakdown in communication between counsel and the defendant.' The defendant bears the responsibility of providing '"an articulated statement of attorney dissatisfaction"' [before a district court has the] '"duty to inquire into a potential conflict"' of interest. [Citations omitted.]" *State v. Brown*, 300 Kan. 565, 575, 331 P.3d 797 (2014).

A district court's inquiry "into the basis of the alleged conflict of interest often includes questions of the attorney [which] requires both the court and defense counsel to walk a delicate line." *Pfannenstiel*, 302 Kan. at 765-66. In determining if an attorney's answers to the inquiry created a conflict of interest, "courts draw a meaningful distinction between (1) an attorney truthfully recounting facts and (2) an attorney going beyond factual statements and advocating against the client's position." 302 Kan. at 766. Ultimately, if the district court has "'a reasonable basis for believing the attorney-client relation has not deteriorated to a point where appointed counsel can no longer give effective aid in the fair presentation of a defense, the court is justified in refusing to appoint new counsel.'" *State v. Sappington*, 285 Kan. 176, 196, 169 P.3d 1107 (2007).

Jones alleges that the district court conducted an appropriate inquiry but failed to order replacement counsel. At issue here is whether Mirel argued against Jones' interest when he told the district court, "[T]here was no misrepresentation made at any time to my client, Judge." Jones argues that *State v. Prado*, 299 Kan. 1251, 329 P.3d 473 (2014), controls the outcome of this case.

In *Prado*, after being charged with one count of aggravated indecent liberties with a child under 14 years old, Prado entered into a plea agreement with the State. Under the

agreement, Prado pled no contest to two counts of rape of a child under 14 by an adult over 18 and the State dismissed the initial charge. The result of the plea was to lessen Prado's prison time.

At sentencing, Prado advised the district court that his attorney did not explain things properly and he did not understand the charges. Defense counsel attempted to clarify Prado's confusion for the district court.

> "'Judge, if I can interject briefly, I think the best way to summarize what Mr. Prado is attempting to say is that it's his position that I did not explain to him the nature of the charges, essentially that I didn't communicate to him what it was that he was pleading to, and based on that, he is asking the Court to allow him to withdraw his plea. I think that's what he is attempting to say.
>
> . . . .
>
> "'Judge, here's my problem. It's in the Complaint. As best I can understand Mr. Prado, he is trying to articulate that he did not understand what was going on. We've had extensive discussions. *I didn't file a motion to withdraw based on conflict because I didn't see a conflict.*'" (Emphasis added.) 299 Kan. at 1254-55.

The Kansas Supreme Court held that defense counsel "explicitly advocated against" Prado's position when counsel stated that he "'didn't file a motion to withdraw [from representing Prado] based on conflict because [he] didn't see a conflict.'" 299 Kan. at 1259. Because an actual conflict existed, the district court failed to conduct any sort of hearing into a potential conflict of interest. 299 Kan. at 1259-60.

The State counters with *State v. McGee*, 280 Kan. 890, 126 P.3d 1110 (2006), which it claims is more applicable. In *McGee*, the district court held a hearing on McGee's pro se motion for new trial counsel. McGee claimed that his defense counsel

6

never visited or talked to him and never worked on his case. In response to McGee's allegations, defense counsel told the district court:

> "'And Judge, if I could add a little to this. *As far as the factual allegations, going there, I see that it says that I haven't visited Mr. McGee and that's not true.* I in fact was going through my file. I visited him shortly after I was appointed to him. We talked about what he wanted to do with his case. He told me that he was planning on going to trial, and he wanted a preliminary.

> . . . .

> "'But, Judge, here is the position I'm in. Mr. McGee has been incarcerated with a couple of clients, or one client of mine that's dissatisfied and is taking action against me right now. I think that's part of it.

> "'*But I feel, Judge, I know I have represented him well. I feel I have.*'" (Emphases added.) 280 Kan. at 895.

On appeal, McGee claimed an "'obvious'" conflict of interest existed because defense counsel contradicted him. The Supreme Court found defense counsel did contradict McGee's facts, but "contradicting the facts did not compromise any confidential information, concede McGee's guilt, or establish that McGee's counsel had any interest that materially limited his representation of McGee." 280 Kan. at 896. The Supreme Court found that McGee failed to support his claims with any facts and held the district court did not abuse its discretion when finding no conflict of interest existed. 280 Kan. at 896.

Here, Jones expressed confusion to the district court at his probation revocation hearing. Jones told the district court that Mirel told him that he could not argue for drug treatment, but, at the hearing, the State said he could. The district court gave Jones time to confer with Mirel, and after returning from recess, the State asked the district court to

7

inquire if Jones wanted to fire Mirel. Jones told the district court that Mirel lied to him by saying he could not argue for drug treatment and he had to go to prison. The district court asked Mirel if he had any comments. Mirel responded:

> "Your Honor, the deal that was originally discussed, that my client actually was on board with, this was maybe about a week ago, a week and a half ago, was my client would . . . come in, admit, agree to do the underlying sentence, in exchange the State would not file a new charge. And that was the agreement up to about 10 minutes ago, when the district attorney, I think for the sake of efficiency, moving this proceeding along, amended their position and now opened the door for us to be free to argue. *So there was no material misrepresentation made at any time to my client, Judge.*" (Emphasis added.)

The district court denied Jones replacement counsel and found no conflict of interest because "robust communication existed."

This case bears a greater resemblance to *McGee* than to *Prado* because the language used by counsel and the circumstances under which counsel's statements are made matter. In *Prado*, defense counsel decided not to file a motion to withdraw based on conflict, despite Prado's request, because defense counsel did not see a conflict. When Prado brought up this issue with the district court, defense counsel continued to tell the district court that no conflict existed and argued that Prado's motion lacked merit. In contrast, McGee's attorney contradicted McGee's facts. McGee claimed that his attorney never visited him or talked about the case. McGee's defense counsel informed the district court of the times they visited and discussed the case. McGee's defense counsel summarized by stating, "'But I feel, Judge, I know I have represented him well. I feel I have.'" 280 Kan. at 895. Admittedly, on its face, this statement appears to contradict McGee's argument that his defense counsel was not representing him well. But the Supreme Court found defense counsel's statement contradicted McGee's facts, not his

8

argument. 280 Kan. at 896. Thus, even defense counsel's final statement did not turn his entire response into an argument against McGee's position.

Our review of the record leads us to conclude that Jones has not established the existence of a conflict of interest. Like *McGee*, the district court here conducted an adequate investigation into Jones' claims—which Jones admits in his brief. In response to Jones' claim that Mirel lied to him, Mirel explained the path the parties took to that moment. The parties negotiated a deal that Jones would agree to serve the underlying prison sentence in exchange for the State not filing a new charge. Jones agreed to this. The agreement did not provide Jones the opportunity to argue for drug treatment. It was not until the probation revocation hearing that the State said that Jones could argue for drug treatment. Mirel summed up his position by stating, "So there was no material misrepresentation made at any time to my client, Judge." Jones takes issue with Mirel's term "material misrepresentation." Jones states that his argument to the district court was that Mirel materially misrepresented matters to him. But, when taken in context, Mirel's statement is a summary of the facts he told the court. Jones claimed Mirel lied to him and hid the fact that Jones could argue for drug treatment. Mirel explained the process to the district court. The State did not indicate that Mirel could seek drug treatment instead of prison until the hearing.

Isolated, Mirel's use of the term "material misrepresentation" does sound like a legal argument. But when viewed in context, Mirel used the term to summarize his response to the district court that he never lied to Jones or hid the fact that Jones could argue for drug treatment. In fact, after the district court denied the motion for new counsel, Mirel argued for the district court not to follow the agreement and send Jones to drug treatment instead.

In short, Mirel did not advocate against Jones' position but only informed the district court of the facts. Mirel did not reveal any confidential information or concede

9

Jones' guilt. After hearing from Jones and Mirel, the district court found that, while disagreement existed, so did robust communication. That communication showed no conflict of interest. The district court had a reasonable basis to believe that the attorney-client relationship between Jones and Mirel had not deteriorated to the point where Mirel could no longer provide an effective defense. Jones fails to allege facts to show that no reasonable person would have agreed with the district court's determination.

II.    DID THE DISTRICT COURT ABUSE ITS DISCRETION WHEN IT REVOKED JONES' PROBATION AND SENTENCED HIM TO PRISON INSTEAD OF DRUG TREATMENT?

Jones also argues that the district court abused its discretion by revoking his probation and imposing his underlying prison sentence instead of ordering drug treatment. Jones cites a University of Memphis Law Review article to argue that prison is not an effective arena to combat drug addiction.

Once a probation violation has been established, the decision to revoke probation is within the discretion of the district court. *State v. Skolaut*, 286 Kan. 219, 227, 182 P.3d 1231 (2008). Jones bears the burden of showing the district court's decision was unreasonable or was based on an error of fact or law. See *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015); *State v. Rojas-Marceleno*, 295 Kan. 525, 531, 285 P.3d 361 (2012).

The district court's discretion to revoke a defendant's probation is limited by the intermediate sanctions requirements outlined in K.S.A. 2018 Supp. 22-3716. Generally, a district court is required to impose intermediate sanctions before revoking an offender's probation. See K.S.A. 2018 Supp. 22-3716(c); *State v. Huckey*, 51 Kan. App. 2d 451, 454, 348 P.3d 997, *rev. denied* 302 Kan. 1015 (2015). However, as Jones acknowledges, there are exceptions that permit a district court to revoke probation without having previously imposed the statutorily required intermediate sanctions, one of which is when

the offender commits a new crime while on probation. See K.S.A. 2018 Supp. 22-3716(c)(8)(A). Another exception permitting revocation without imposing sanctions is if the offender's probation was "originally granted as the result of a dispositional departure." K.S.A. 2018 Supp. 22-3716(c)(9)(B).

As it is undisputed that Jones had been given the opportunity at probation as a result of a dispositional departure and committed a new offense while on probation, it is clear the district court had the authority to revoke his probation without imposing any intermediate sanctions. It is also clear from the record that the district court considered Jones' arguments in mitigation, particularly his need for drug treatment, and rejected them while also noting that Jones' sentence was presumptive prison and that he had committed a new crime while on probation for other crimes. We have no trouble concluding that a reasonable person could agree with the district court's rationale. Accordingly, the district court did not abuse its discretion in revoking Jones' probation and imposing his underlying prison sentence.

Affirmed.