NOT DESIGNATED FOR PUBLICATION

No. 122,970

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ROGELIO ARTURO SAENZ-ORTIZ,
*Appellant*.

MEMORANDUM OPINION

Appeal from Ford District Court; LAURA H. LEWIS, judge. Opinion filed October 15, 2021. Affirmed.

*Carol Longenecker Schmidt*, of Kansas Appellate Defender Office, for appellant.

*Steven J. Obermeier*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., SCHROEDER, J., and WALKER, S.J.

PER CURIAM: Rogelio Arturo Saenz-Ortiz entered into a plea agreement and pled no contest to aggravated kidnapping and aggravated battery. He now appeals, raising four points of error: (1) The district court erred when it denied his presentence motion to withdraw his pleas; (2) the district court failed to inquire into a potential conflict of interest with his defense counsel; (3) the district court denied his motion to continue the sentencing hearing so he could call a witness to present mitigating evidence; and (4) the district court denied his request for a dispositional departure to probation. Finding no error by the district court, we affirm.

FACTS

The facts are well known to the parties. Briefly stated, they reflect the victim, Misty Hernandez, was at a casino with Saenz-Ortiz and another friend on the evening of the incident in July 2018. Saenz-Ortiz and Hernandez took their friend home after leaving the casino and drove toward Dodge City Raceway Park. Saenz-Ortiz abruptly stopped the vehicle, accused Hernandez of having an affair, and repeatedly beat her for about three hours.

Saenz-Ortiz bound Hernandez' hands with duct tape, taped her mouth, and told her she was going to die. Saenz-Ortiz struck Hernandez in the head with either his fist or a baseball bat, knocking Hernandez unconscious. Hernandez woke up in a chair in her apartment with a towel covering her torso. Hernandez got dressed and asked a neighbor to take her to the hospital. Hernandez had multiple bruises, abrasions, cuts, and swelling on her face, arms, legs, and torso.

Officers later contacted Saenz-Ortiz in a traffic stop, placed him in custody, and impounded his car. A brown leather belt was clearly visible on the front passenger seat of the vehicle, there was blood on the vehicle's door, and a baseball bat was visible in the back seat. Saenz-Ortiz gave a written statement about the incident, stating: "[W]omen with [problems] with drug use and their problem with letting go of me cause I used to be the one who [paid] all her [bills] and financial debts. Simple as that."

The State charged Saenz-Ortiz with: (1) aggravated kidnapping, a severity level 1 person felony; (2) aggravated robbery, a severity level 3 person felony; (3) aggravated battery, a severity level 7 person felony; and (4) criminal threat, a severity level 9 person felony. Each charge included a domestic violence designation under K.S.A. 2018 Supp. 22-4616.

2

Saenz-Ortiz initially pled not guilty to all four charges, and the district court set his case for trial. Saenz-Ortiz later accepted a plea agreement. In exchange for Saenz-Ortiz' pleas of guilty or no contest to the charges of aggravated kidnapping and aggravated battery, the State agreed to dismiss the remaining charges of aggravated robbery and criminal threat and to recommend a dispositional departure to probation with community corrections. The State and Saenz-Ortiz agreed to an extended probation period of 60 months.

A hearing was set for Saenz-Ortiz to enter his no-contest pleas to the charges of aggravated kidnapping and aggravated battery. At the hearing, defense counsel specifically stated on the record:

> ". . . I've explained to my client on more than one occasion that the agreement is that he gets probation and that you will typically follow that agreement. But, that if he screws up on probation, he's basically looking at 50 years in prison.
>
> "I just want to make that clear that we've had these conversations numerous times . . . he hopefully will get this chance on probation. But, that if he can't do it, you know, the [consequences are]—
>
> . . . .
>
> "—big time."

The district judge who conducted the plea hearing clarified he would probably not be the sentencing judge. The district court then ensured Saenz-Ortiz understood the possible penalties associated with the charges against him. In compliance with the revised Kansas Sentencing Guidelines Act (KSGA), K.S.A. 2018 Supp. 21-6801 et seq., the district court specifically explained, "In Count One, you've been charged with aggravated attempted—kidnapping, a severity level one person felony, which carries anywhere from 653-months to a low of 147-months, depending on your criminal history, and up to a $500,000.00 fine." Saenz-Ortiz confirmed he understood the possible penalties. The district court then explained, "Count Three is aggravated battery, a severity level seven

person felony, which carries anywhere from 34-months to a low of 11-months and up to $100,000.00 fine." Saenz-Ortiz again confirmed he understood the possible penalties. The district court also explained:

> "THE COURT: Okay. The plea agreement has been put on record. You indicated you understand it, it's what you want to do.
>
> "But, do you understand that the Court is not bound by the sentencing recommendations, so the Court can sentence you to anything that is appropriate under the law?
>
> "Do you understand that?
>
> "THE DEFENDANT: Yes, sir.
>
> "THE COURT: Have you had adequate time to talk to your attorney and has he been able to adequately answer your questions?
>
> "THE DEFENDANT: Yes, sir.
>
> "THE COURT: Other than the plea agreement, has anyone threatened you in any way to get you to enter into this plea agreement?
>
> "THE DEFENDANT: No, sir.
>
> "THE COURT: So, whatever you do, you're doing what you want to do after you've had time to talk to your attorney about your options and determined this is your best option under this circumstance; is that correct?
>
> "THE DEFENDANT: Yes, sir.
>
> . . . .
>
> "THE COURT: So, you enter this plea—plea agreement freely, voluntarily, and something you want to do; correct?
>
> "THE DEFENDANT: Yes, sir."

Saenz-Ortiz pled no contest to aggravated kidnapping and aggravated battery. The district court found Saenz-Ortiz guilty of both charges and released him on a personal recognizance bond pending sentencing. The State, prior to sentencing, filed a motion for an extended term of probation as agreed to in the plea agreement if the district court followed the plea agreement's recommendation for probation with community

4

corrections. Saenz-Ortiz filed a motion for dispositional departure, stating, in support of his motion, the State agreed with such departure to probation.

At the sentencing hearing in December 2019, the district judge called counsel for both parties into her chambers and suggested she was not inclined to follow the plea agreement. The district court continued sentencing to February 2020. A few days before the new sentencing hearing, Saenz-Ortiz filed a motion to withdraw his pleas and an amended motion for dispositional and/or durational departure. In his amended motion for dispositional and/or durational departure, Saenz-Ortiz stated he was attending anger management therapy, attending church every weekend, had obtained gainful employment, and did not have any violations while released on bond. Saenz-Ortiz also stated he had been released from confinement for almost four months without issue, suggesting he was a good candidate for probation.

In February 2020, the district court conducted a plea withdrawal and sentencing hearing. Saenz-Ortiz presented his motion to withdraw his pleas for good cause prior to sentencing. Saenz-Ortiz argued, "The good cause in this case is pretty simple is that the prosecutor is in agreement with it." The State confirmed it did not oppose Saenz-Ortiz' motion to withdraw his pleas and, if the motion to withdraw his pleas was denied, it remained bound by the plea agreement, recommending a dispositional departure to probation with community corrections.

Saenz-Ortiz also noted a different district judge handled his plea hearing than the sentencing judge and, had the judge been the same at both hearings, he would have known the sentencing judge's concerns about the plea agreement. Saenz-Ortiz explained his pleas were not fairly and understandingly made and his case did not involve sexual abuse of children or harm to children, which he asserted would normally give rise to the sentencing judge's unwillingness to follow the plea agreement.

The district court denied the motion to withdraw his pleas, noting Saenz-Ortiz did not present evidence challenging the competency of defense counsel; did not suggest he was pressured, coerced, or misled about the possible penalties; did not show the pleas were not fairly and understandingly made; and the district court was not constitutionally required to follow the plea agreement by granting a dispositional departure to probation.

The district court then proceeded to sentencing. Saenz-Ortiz had no objection to his criminal history score, and the victim made a statement to the district court explaining how the incident affected her. Saenz-Ortiz then took the stand, denied the victim's recollection of events, and asked the district court to follow the plea agreement. The following was presented as part of Saenz-Ortiz' testimony:

> "[DEFENSE COUNSEL]: You have denied the overall allegations, at least to the extent of what had happened; right?
> "[DEFENDANT]: Yes, sir.
> "[DEFENSE COUNSEL]: And, then, you were offered a plea by the government to get probation; correct?
> "[DEFENDANT]: Yes, sir.
> "[DEFENSE COUNSEL]: And, I explained to you that in my 18 years, no judge has ever not followed with the plea agreement; right?
> "[DEFENDANT]: Yes, sir.
> "[DEFENSE COUNSEL]: But, that it was possible that you would still have to go to prison; correct?
> "[DEFENDANT]: Yes, sir.
> "[DEFENSE COUNSEL]: And, I explained to you that this wasn't the type of case that normally—involving children, or something, that I've seen the Court not honor a plea agreement; right?
> "[DEFENDANT]: Yes, sir.
> "[DEFENSE COUNSEL]: But, you knew it was possible; correct?
> "[DEFENDANT]: Yes, sir.

"[DEFENSE COUNSEL]: All right. And, you chose to go through with this plea; right?

"[DEFENDANT]: Yes, sir."

After Saenz-Ortiz testified and the hearing had been in progress for about 30 minutes, defense counsel called Saenz-Ortiz' probation officer to the stand. But the probation officer was not available because she was home ill. Defense counsel had not issued a subpoena because he had talked with the probation officer the day before the sentencing hearing, and she had agreed to appear. Defense counsel then asked for a continuance until the probation officer, whose "glowing recommendations" would benefit Saenz-Ortiz, could appear. The district court denied the request and, instead, took judicial notice there were no motions or affidavits filed by the probation officer while Saenz-Ortiz was on bond.

Saenz-Ortiz' criminal history reflected a score of A. The district court partially granted Saenz-Ortiz a durational departure sentence. For the aggravated kidnapping conviction, the district court departed from the standard range of the KSGA sentence of 620 months to 206 months' imprisonment, with a concurrent sentence of 12 months' imprisonment for the aggravated battery conviction with 36 months of postrelease supervision. The district court noted the basis for the downward durational departure was the plea agreement the State entered into with Saenz-Ortiz.

I.   THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION BY DENYING SAENZ-ORTIZ' PRESENTENCE MOTION TO WITHDRAW HIS PLEAS.

Saenz-Ortiz argues the district court abused its discretion in denying his presentence motion to withdraw his pleas because he did not understand the likelihood of receiving a prison sentence and both parties agreed to rescind the plea agreement. Saenz-Ortiz acknowledges the district court explained it was not bound by the recommendations

7

from the plea agreement, it could impose any appropriate sentence under the law, and it reviewed the possible penalties with him. Saenz-Ortiz specifically asserts he did not understand the likelihood of not receiving probation per the recommendations from the plea agreement. Saenz-Ortiz claims it is undisputed defense counsel gave him reason to believe he would receive probation rather than a prison sentence. Saenz-Ortiz also contends the State's willingness to join in his motion to withdraw his plea is further support there was good cause to allow it.

The State responds the district court did not have to follow the plea agreement and retained its discretion to make an independent decision on whether Saenz-Ortiz should be allowed to withdraw his plea irrespective of the parties' agreement.

Generally, appellate courts review a district court's decision to deny a presentence motion to withdraw a guilty or no contest plea for an abuse of discretion. A district court abuses its discretion if its decision is based on an error of fact or law or is arbitrary, fanciful, or unreasonable. *State v. Frazier*, 311 Kan. 378, 381, 461 P.3d 43 (2020). "The movant bears the burden to prove the district court erred in denying the motion." *State v. Hutto*, 313 Kan. 741, 745, 490 P.3d 43 (2021).

"A plea of guilty or nolo contendere, for good cause shown and within the discretion of the court, may be withdrawn at any time before sentence is adjudged." K.S.A. 2020 Supp. 22-3210(d)(1). A district court generally considers whether a defendant has established good cause to withdraw his or her plea by looking to the following three *Edgar* factors: (1) whether the defendant was represented by competent counsel; (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (3) whether the plea was fairly and understandingly made. *Frazier*, 311 Kan. at 381; *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 (2006). These factors establish "'viable benchmarks'" for the district court when exercising its discretion, but "a court should not ignore other factors that might exist in a particular case." *State v.*

*Schaefer*, 305 Kan. 581, 588, 385 P.3d 918 (2016); see *State v. Fritz*, 299 Kan. 153, 154, 321 P.3d 763 (2014) (*Edgar* factors should not "be applied mechanically and to the exclusion of other factors.").

Saenz-Ortiz first argues the district court erred in determining good cause did not exist to withdraw his pleas under the third *Edgar* factor—his pleas were not fairly and understandingly made—and because, under general contract principles, both parties to the plea agreement agreed withdrawal of the pleas was appropriate.

*Fairly and understandingly made*

During his plea hearing, the district court questioned Saenz-Ortiz about his understanding of the possible penalties and rights he would be giving up if he entered a plea to aggravated kidnapping and aggravated battery. The district court specifically addressed and explained to Saenz-Ortiz:

- The sentence for aggravated kidnapping could range from 147 months' to 653 months' imprisonment;
- The sentencing range for aggravated battery was from 11 months' to 34 months' imprisonment;
- His rights to a jury trial, to cross-examine witnesses, to testify in his behalf or not, and to subpoena witnesses would be waived by entering a plea;
- He was not threatened or coerced in any way to enter into the plea agreement;
- He had discussed with his attorney his options and determined the plea agreement was his best option under the circumstances;
- He had adequate time to talk with this attorney about the case;
- His plea was freely and voluntarily entered; and
- The district court was not bound by the plea agreement.

9

The records from the plea hearing and the sentencing hearing reflect Saenz-Ortiz entered his pleas voluntarily and with full understanding of the consequences. The district judges who presided over the hearings observed Saenz-Ortiz when he stated he understood the nature of the charges against him and the consequences of his pleas. See *Schaefer*, 305 Kan. at 595 ("[A]ppellate courts will not overturn a trial court's weighing of the evidence or assessment of witness credibility from a cold record.").

While Saenz-Ortiz appeared before one judge for his plea hearing and another judge for sentencing, he was advised at the plea hearing another judge would be doing the sentencing. Saenz-Ortiz was informed of the consequences of entering his pleas, including the maximum possible sentences. Though defense counsel advised Saenz-Ortiz he had never witnessed a judge decide not to follow a plea agreement, he told Saenz-Ortiz it was still possible. Saenz-Ortiz also admitted his attorney told him:

- It was possible he could go to prison;
- The district court did not have to follow the plea agreement; and
- The district court could impose any sentence appropriate under the law.

Saenz-Ortiz has not shown the district court abused its discretion when it denied his motion to withdraw his plea under the third *Edgar* factor.

*Contract principles*

Saenz-Ortiz also argues he had good cause to withdraw his plea for a reason outside the *Edgar* factors, which the district court typically relies on. The district court may consider other factors when determining whether a defendant has established good cause to withdraw his or her plea. *State v. Aguilar*, 290 Kan. 506, 513, 231 P.3d 563 (2010). Further, when a defendant enters a plea agreement, it is entered with the understanding the State will fulfill certain promises in exchange for the defendant's plea.

10

*State v. Peterson*, 296 Kan. 563, 567, 293 P.3d 730 (2013); see *Frazier*, 311 Kan. at 382 (applying contract principles to good cause showing). Saenz-Ortiz makes no argument the State did not fulfill its part of the agreement.

Saenz-Ortiz argues the district court erred in not allowing him to withdraw his plea because the State agreed he should be allowed to withdraw his plea. But the district court informed Saenz-Ortiz, prior to his plea, it was not a party to the plea agreement and could impose any sentence appropriate under the law. Simply put, Saenz-Ortiz *entered into* an agreement with the State as to *how* he would plead and what the State would *recommend*. He then *entered* his pleas—i.e., *fulfilling* his contractual obligation, not *creating* a contractual agreement—after the district court explicitly advised: (1) There was no agreement between the parties and the district court, and (2) any recommendations of the parties at his sentencing were not binding on the district court. Saenz-Ortiz overlooks a more relevant contractual principle: He cannot bind the district court to an agreement it was not a party to. See *State v. Beck*, 307 Kan. 108, 110, 406 P.3d 377 (2017) ("'[I]n Kansas both parties to a plea agreement assume the risk the sentencing court will impose a sentence different than the sentence recommended as part of the plea agreement because sentence recommendations made pursuant to a plea bargain are not binding on the trial court.' [Citation omitted.]").

Saenz-Ortiz has not established the district court's decision to deny his motion to withdraw his plea was an error of fact or law or done in an arbitrary, fanciful, or unreasonable manner. Considering the severity of the multiple crimes he was convicted of, the victim's statements, and Saenz-Ortiz' lack of remorse, the district court's decision appears reasonable. The district court was well within its statutory authority and sound discretion to sentence Saenz-Ortiz as it deemed appropriate and not as Saenz-Ortiz and the State agreed to recommend in the plea agreement.

II.     WE OBSERVE NO POTENTIAL CONFLICT OF INTEREST BETWEEN DEFENSE
        COUNSEL AND SAENZ-ORTIZ.

Saenz-Ortiz' second argument claims the district court should have observed and then inquired about a potential conflict of interest between him and his defense counsel once the plea agreement was not followed. Saenz-Ortiz contends his trial counsel's statement that he had never had a plea agreement not followed by a district court in his 18 years of experience should have alerted the district court to the potential conflict of competent representation. Saenz-Ortiz also argues the district court erred in failing to appoint conflict-free counsel to litigate his motion to withdraw his pleas. Saenz-Ortiz asks us to reverse and remand for the appointment of conflict-free counsel and to order a new hearing on his presentence motion to withdraw his pleas based on defense counsel's alleged ineffective assistance in advising Saenz-Ortiz about his chance of receiving probation. In the alternative, Saenz-Ortiz asks us to remand to the district court for an evidentiary hearing to determine whether the conflict of interest adversely affected counsel's performance.

*Preservation*

Saenz-Ortiz argues defense counsel proffered sufficient evidence to trigger the district court's duty to inquire into a potential conflict of interest when defense counsel admitted through his questioning that he told Saenz-Ortiz no judge had ever disregarded a plea agreement in this type of case. The State responds Saenz-Ortiz knew how to inform the judge about any potential complaint with his counsel because he had requested new counsel before in this case.

The State correctly points out Saenz-Ortiz had three attorneys throughout the course of his case. The district court originally appointed Saenz-Ortiz counsel, but Saenz-Ortiz became dissatisfied with the appointed counsel and requested and received another

appointed attorney. His second appointed counsel later withdrew when Saenz-Ortiz retained private counsel who helped him craft the agreed to plea agreement.

Our Supreme Court has explained: "[G]enerally the factual aspects of a claim of ineffective assistance of counsel require that the matter be resolved through a K.S.A. 60-1507 motion or through a request to remand the issue to the district court for an evidentiary hearing." *State v. Galaviz*, 296 Kan. 168, 192, 291 P.3d 62 (2012). Our Supreme Court further noted it has occasionally recognized a record was sufficient to determine the issue for the first time on appeal. 296 Kan. at 192. We, therefore, will consider whether the record in this case is sufficient to determine the asserted conflict-of-interest issue for the first time on appeal.

### *Potential conflict*

> "'[T]he Sixth Amendment to the United States Constitution guarantees a criminal
> defendant the right to effective assistance of counsel.' The right to counsel encompasses
> the right to representation that is free from conflicts of interest. 'It is the task of the
> district judge to insure that a defendant's right to counsel under the Sixth Amendment to
> the United States Constitution is honored.' [Citations omitted.]" *State v. Stovall*, 298 Kan.
> 362, 370, 312 P.3d 1271 (2013).

When the district court is notified or becomes aware of a potential conflict of interest between the defendant and his or her defense attorney, it must make an appropriate in-depth inquiry into the conflict. If an appropriate inquiry is made, the district court's decision to deny a motion to withdraw counsel is reviewed under the abuse of discretion standard. 298 Kan. at 370. Failure to make an adequate inquiry when the court is aware of the potential conflict constitutes an abuse of discretion. *State v. Marshall*, 303 Kan. 438, 447, 362 P.3d 587 (2015).

Saenz-Ortiz relies on *State v. Toney*, 39 Kan. App. 2d 1036, 1041, 187 P.3d 138 (2008), in which a panel of this court determined the district court erred when it failed to inquire about a potential conflict of interest. In *Toney*, however, the defendant, as well as his counsel, advised the district court of a potential conflict of interest. Here, the district court was not directly advised of, or made aware of, a potential conflict of interest just because Saenz-Ortiz filed a motion to withdraw his pleas, alleging his pleas were not understandingly made. The filing of a presentence motion to withdraw plea does not automatically place the district court on notice of a potential conflict of interest. See *State v. Hulett*, 293 Kan 312, 321, 263 P.3d 153 (2011) (finding no error in district court's "'failure to address a nonexistent, possible conflict of interest'" between counsel and defendant at time of hearing on motion to withdraw plea). Saenz-Ortiz was aware he could make a claim his attorney was ineffective as he had three attorneys throughout the pendency of his case. In fact, Saenz-Ortiz' first court appointed attorney withdrew, with permission from the district court, because Saenz-Ortiz was dissatisfied with his counsel. Saenz-Ortiz did not present a potential conflict of interest to the district court's attention.

While Saenz-Ortiz' counsel told him the district court would likely sentence him to probation under the plea agreement, defense counsel also advised him a lengthy prison sentence was still possible. The district court clearly explained it was not a party to the plea agreement and could sentence Saenz-Ortiz to imprisonment for up to 653 months for aggravated kidnapping and up to an additional 34 months for aggravated battery. Saenz-Ortiz confirmed he understood. We observe no obvious signs the district court should have recognized to inquire about a potential conflict of interest and, therefore, did not fail to make an adequate inquiry. See *Marshall*, 303 Kan. at 447-48.

14

III.    THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN DENYING A
        CONTINUANCE OF THE SENTENCING HEARING.

Saenz-Ortiz' third argument claims the district court abused its discretion in denying his oral motion to continue his sentencing hearing after it had been underway for almost 30 minutes, thereby violating his statutory right to present evidence in mitigation of punishment. As we previously stated, a district court abuses its discretion if its decision is based on an error of fact or law or is arbitrary, fanciful, or unreasonable. *Frazier*, 311 Kan. at 381. Saenz-Ortiz bears the burden of showing such abuse of discretion. See *State v. Thomas*, 307 Kan. 733, 739, 415 P.3d 430 (2018).

K.S.A. 2020 Supp. 22-3424(e)(4) states the district court must personally address the defendant and ask if he or she wants to make a statement on his or her own behalf and present any evidence in mitigation of punishment. Saenz-Ortiz contends the issue involves statutory interpretation, a question of law over which this court has unlimited review. See *State v. Ruiz-Reyes*, 285 Kan. 650, 653, 175 P.3d 849 (2008). Further, K.S.A. 22-3401 permits a district court to grant a continuance for good cause shown.

Saenz-Ortiz requested a continuance so his probation officer, who was unable to appear due to illness, could testify on his behalf. For support, Saenz-Ortiz heavily relies on *State v. Haney*, 299 Kan. 256, 323 P.3d 164 (2014). In *Haney*, defense counsel had requested a continuance for one month to allow the defendant to obtain a sex offender evaluation in support of his motion for a durational departure. The district court determined the expert report was unnecessary. Our Supreme Court determined the district court committed reversible error by denying defense counsel's request to continue sentencing to present evidence in mitigation of punishment and the district court erred as to the legal effect of a sex offender evaluation because district judges often use such evaluations as a risk assessment that could provide substantial and compelling reasons for a departure sentence. 299 Kan. at 260-62.

15

This case differs from *Haney*. Here, Saenz-Ortiz wanted his probation officer to testify to provide "glowing recommendations" about how well he was doing while on bond pending sentencing and was not asking for time to obtain an expert to testify about substantial and compelling reasons to grant a dispositional departure. Saenz-Ortiz' probation officer was not able to appear at the sentencing hearing; however, the probation officer's supervisor appeared. The supervisor was unable to speak to Saenz-Ortiz' case specifically but noted if any violations had occurred, Saenz-Ortiz would be back in jail, which he was not. The supervisor also stated, "I noticed there [weren't] any hot U.A.s, or any issues. So, that's all I can say on [the probation officer's] behalf."

Saenz-Ortiz has failed to meet the burden to show the district court abused its discretion when it denied his motion for a continuance in the middle of the hearing. Had she appeared, the probation officer's testimony would have been limited to how Saenz-Ortiz performed on bond during the four-month period between his plea and final sentencing hearing. Further, the district court took judicial notice of the fact Saenz-Ortiz had not had any issues while on bond supervision. Given the fact the motion to continue the sentencing hearing came after the hearing had been in progress for about 30 minutes, the district court did not abuse its discretion in denying Saenz-Ortiz' motion. Even if reasonable persons could disagree as to the propriety of the district court's decision, it is not an abuse of discretion. *State v. Ballou*, 310 Kan. 591, 616, 448 P.3d 479 (2019).

IV. THE DISTRICT COURT DID NOT ERR IN DENYING SAENZ-ORTIZ' MOTION FOR A DISPOSITIONAL DEPARTURE.

As a threshold matter, the State acknowledges that because the district court granted a durational departure, we have jurisdiction to review the denial of Saenz-Ortiz' request for a dispositional departure. See *State v. Looney*, 299 Kan. 903, 909, 327 P.3d 425 (2014). Saenz-Ortiz asserts he met four nonstatutory mitigating factors to justify a dispositional departure to probation. Saenz-Ortiz also suggests a dispositional departure

16

would better serve the goals of the KSGA by promoting rehabilitation and reducing recidivism. The State responds it was reasonable for the district court to grant a substantial downward durational departure rather than a dispositional departure to probation.

We review the extent of a district court's departure sentence for an abuse of discretion. *State v. Spencer*, 291 Kan. 796, 807-08, 248 P.3d 256 (2011). Again, a district court abuses its discretion if its decision is based on an error of fact or law or is arbitrary, fanciful, or unreasonable. *Frazier*, 311 Kan. at 381. And again, Saenz-Ortiz bears the burden of showing such abuse of discretion. See *Thomas*, 307 Kan. at 739. Saenz-Ortiz argues no reasonable person would have taken the district court's view denying his request for a dispositional departure but identifies no error of fact or law underlying its decision.

At sentencing, Saenz-Ortiz had a criminal history score of A, which means under the KSGA he was subject to presumptive imprisonment. The district court must impose a defendant's presumptive sentence unless it "finds substantial and compelling reasons to impose a departure sentence." K.S.A. 2020 Supp. 21-6815(a). A reason is substantial if it is real and of substance, and not imagined and ephemeral. Reasons are compelling when the facts of the case force the court to abandon the status quo and impose an abnormal sentence. Reasons which may justify a departure in one case may not justify a departure in every case. *State v. Reed*, 302 Kan. 227, 250, 352 P.3d 530 (2015).

Under K.S.A. 2020 Supp. 21-6815(c), a district court may consider both mitigating and aggravating factors when determining whether substantial and compelling reasons exist for a departure sentence. K.S.A. 2020 Supp. 21-6815(c)(1) provides a nonexclusive list of mitigating factors the district court can consider to determine whether substantial and compelling reasons exist for a departure sentence. Saenz-Ortiz argues the district court abused its discretion in denying him probation because: (1) he had obtained

employment while on bond during the four months before sentencing; (2) his last felony was over 10 years ago; (3) he had attended five to six anger management classes, was attending therapy classes, and was regularly going to church; (4) he had not failed a urinalysis test while on bond; and (5) he had not contacted the victim while on bond.

The district court acknowledged Saenz-Ortiz' good behavior while on bond but explained most of the factors Saenz-Ortiz relied on were neutral factors: Saenz-Ortiz was expected to be a law-abiding citizen, to maintain employment while released on bond, and to follow the rules and laws of society. And even though Saenz-Ortiz was attending anger management therapy, it was not a self-motivated decision as he started after the initial sentencing hearing was continued when the judge revealed her concerns with the plea agreement. The district court also considered the written statement Saenz-Ortiz made in the presentence investigation where he failed to take responsibility for his actions— essentially, blaming the victim for her beating—and the fact this crime occurred just three months after he was released from probation for a prior crime against the same victim. The victim also testified, providing the district court with her version of the attack where she sustained physical, emotional, and mental harm from Saenz-Ortiz' actions.

Saenz-Ortiz has not established the district court's decision to deny his request for a dispositional departure sentence to probation upon conviction for two person felonies with a criminal history score of A was arbitrary, fanciful, or unreasonable. And he does not assert its decision was based on an error of fact or law, nor does the record in any way reflect such an error. In fact, the district court granted a substantial downward durational departure from the presumptive prison mid-range sentence of 620 months for aggravated kidnapping to 206 months' imprisonment in recognition of Saenz-Ortiz' plea agreement with the State. Here, the district court was well within its statutory authority to deny Saenz-Ortiz' request to order extended probation with community corrections and, instead, order a substantial downward durational departure to 206 months' imprisonment for the aggravated kidnapping conviction, with a concurrent sentence of 12 months for

the aggravated battery conviction with 36 months of postrelease supervision. Even if reasonable persons could disagree as to the propriety of the district court's decision, it is not an abuse of discretion. *Ballou*, 310 Kan. at 616.

Affirmed.